JUDGE KOELTL

Philip R. White, Esq.
Loryn P. Riggiola, Esq.
Sills Cummis & Gross, P.C.
One Rockefeller Plaza
New York, New York 10020
Telephone: (212) 643-7000
Fax: (212) 643-6500
Attorneys for Mitsubishi Heavy Industries, Ltd.
and Mitsubishi Power Systems Americas, Inc.

# 08 CV 00509

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JAN 18 2008
U.S.D.C. S.D.N.Y.
CASHIERS

---

In the Matter of the Arbitration Between
Mitsubishi Heavy Industries, Ltd. and
Mitsubishi Power Systems Americas, Inc.,

                              Petitioners,

And

Stone & Webster, Inc.

                              Respondent.

---

No. _____

**PETITION TO VACATE AWARD OF
ARBITRATORS PURSUANT TO 9 U.S.C.
§ 10**

---

Petitioners Mitsubishi Heavy Industries, Ltd. ("MHI") and Mitsubishi Power Systems

Americas, Inc. ("MPSA," and together with MHI, "Mitsubishi") hereby petition the Court,

pursuant to 9 U.S.C. § 10, for an Order vacating the partial final award (the "Award") rendered

in the arbitration between Petitioners and Respondent Stone & Webster, Inc. ("S&W") relating

to disputes arising under certain contracts for the supply of equipment and services to an

electrical power generating station near Granbury, Texas.  In support of this petition, Petitioners

allege as follows:

## IDENTITY OF THE PARTIES

1.      Petitioner MHI is organized under the laws of Japan, with its principal place of

business located in Tokyo, Japan.  MHI provides machinery and services for the energy industry.

2.      Petitioner MPSA is a subsidiary of MHI. MPSA is a corporation organized under the laws of Delaware, with its principal place of business located in Lake Mary, Florida.

3.      On information and belief, Respondent Stone & Webster, Inc. ("S&W") is a corporation organized under the laws of the State of Louisiana, with its principal place of business located in Baton Rouge, Louisiana. S&W is the successor to a company of the same name, which, after filing for bankruptcy in 2000, was purchased by the Shaw Group, Inc. ("Shaw"). On its website, Shaw holds itself out as a "vertically-integrated provider of comprehensive engineering, consulting, procurement, pipe fabrication, construction, and maintenance services to the power and process industries."

4.      Mitsubishi and S&W are parties to an ongoing arbitration administered by the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA") captioned *In the Matter of the Arbitration between: Stone & Webster, Inc. vs. Mitsubishi Heavy Industries, Ltd., Mitsubishi Power Systems, Inc.*, ICDR Case No. 50 T 198 00414 03. This petition seeks to vacate an award in that arbitration that purports to finally decide S&W's claim that Mitsubishi is responsible for liquidated damages associated with delay in the construction of an electrical power generating station pursuant to two related contracts: (1) Contract Between AES Wolf Hollow, L.P. and Mitsubishi Heavy Industries, Ltd. for the Supply of 2 M501G Combustion Turbine Generators and 1 Steam Turbine Generator for the AES Wolf Hollow Plant (the "Turbine Contract"),[1] and (2) Contract between AES Wolf Hollow, L.P. and MHIA for the supply of 2 Heat Recovery Steam Generators and Auxiliaries for the AES Wolf

---

[1] A copy of the Turbine Contract is attached as Exhibit D to the Affirmation of Philip R. White, Esq., dated January 18, 2008 ("1/18/08 White Aff."), and incorporated herein by reference.

Hollow Plant (the "HRSG Contract," and together with the Turbine Contract, the "Supply Contracts").[2]

## JURSIDICTION AND VENUE

5.     This petition is brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

6.     This Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and more than $75,000, exclusive of interest and costs, is at stake in the controversy.

7.     The parties agreed in writing to resolve its disputes by arbitration under the Supply Contracts and agreed that "[t]he arbitration shall be held in New York, New York, which shall be the seat of arbitration." Supply Contracts, Article 20.3(iv).  The parties further agreed that "[t]he arbitrators shall resolve all questions of state law by application of the substantive law of New York." *Id.*, Article 20.3(vii).  S&W availed itself of these provisions by filing a Demand for Arbitration on August 29, 2003.

8.     Because the Award was made in New York, New York, venue is proper in the Southern District of New York pursuant to 9 U.S.C. § 10.

## THE UNDERLYING DISPUTE

### The Wolf Hollow Project

9.     The underlying dispute in this case relates to the construction of an electrical power generating station known as the Wolf Hollow Project, located in Hood County, Texas near Granbury.  Wolf Hollow is a gas-fired, combined-cycle power plant, which uses environment-friendly technology to raise the electrical output of a gas-operated power station by recovering

---

[2]  A copy of the HRSG Contract is attached as Exhibit E to the 1/18/08 White Aff., and incorporated herein by reference.

the thermal energy in the gas turbine exhaust. Wolf Hollow was designed to generate 715 megawatts of power for over 50,000 households in Texas.

10.     Construction on the Wolf Hollow Project started in early 2000. It involved almost 500 subcontractors, suppliers, sub-suppliers and vendors.

11.     Among the suppliers for the Wolf Hollow Project was Mitsubishi. The owners of the project, certain affiliates of AES Corporation ("AES"), selected Mitsubishi to supply two combustion turbine generators, one steam turbine generator, and two Heat Recovery Steam Generators ("HRSGs") and auxiliaries. *See generally* Supply Contracts.[3] Mitsubishi's scope of responsibility on the Wolf Hollow Project under the Supply Contracts was limited to the provision of certain equipment and an agreed amount of consultation and advisory services referred to as Technical Field Advisory ("TFA") services.

12.     Respondent S&W was the engineering, procurement and construction ("EPC") contractor at the Wolf Hollow Project. S&W replaced National Energy Production Corporation ("NEPCO") as the EPC contractor in March 2002 following the collapse of NEPCO's parent company, Enron Corp.

### Delays to Provisional Acceptance

13.     In agreeing to take over NEPCO's responsibilities as EPC contractor at Wolf Hollow in March 2002, S&W negotiated only a 14-day extension to the construction schedule, moving the Guaranteed Provisional Acceptance Date ("GPAD") from October 1, 2002 to October 15, 2002.

14.     According to AES, S&W only achieved "conditional" Provisional Acceptance on August 8, 2003 – nearly ten months late. As a result, AES assessed liquidated damages in the form of "price rebates" against S&W in the amount of $39,885,000 for 297 days of delay.

---

[3] The HRSG Contract, initially signed by Mitsubishi Heavy Industries America, Inc., an MHI affiliate, was assigned to MPSA in July 2001.

15.     Notwithstanding Mitsubishi's limited scope of responsibility on the Wolf Hollow Project, S&W attempted to pass over $38 million of liquidated damages – all but fifteen days' worth of delay – through to Mitsubishi under the Supply Contracts.

16.     Beginning in June 2003, S&W issued a series of invoices to Mitsubishi purporting to assess liquidated damages and expressing S&W's intention to draw down the letters of credit that Mitsubishi had posted in connection with the project. Ultimately, S&W issued nine invoices assessing $38,275,000 in liquidated damages for 282 days of delay.

17.     Mitsubishi has consistently disputed S&W's assessment of liquidated damages.

### The Arbitration

18.     On August 29, 2003, S&W submitted a Demand for Arbitration to the ICDR, commencing arbitration before a three-member arbitral tribunal ("Tribunal") pursuant to Article 20.3 of the Supply Contracts.

19.     Nearly two-and-a-half years after an evidentiary hearing in May 2005, the Tribunal reached a majority decision dated October 22, 2007 on S&W's claim for liquidated damages. Mitsubishi received the majority decision on or about November 16, 2007. The majority found Mitsubishi contingently responsible for $14,504,519.11 in liquidated damages associated with 108.5 days of project delay. A copy of the majority opinion is attached as Exhibit A to the Affirmation of Philip R. White, Esq., dated January 18, 2008 ("1/18/08 White Aff."), and incorporated herein by reference.

20.     The dissenting opinion by Arbitrator Edward Vena, dated November 14, 2007, was received by Mitsubishi on or about November 16, 2007. Arbitrator Vena's dissent is attached as Exhibit B to the 1/18/08 White Aff., and incorporated herein by reference.

## GROUNDS FOR VACATING THE AWARD

21.    The Supply Contracts require the use of a CPM Schedule in the course of performance. *See, e.g.,* Supply Contracts at Articles 2.2, 2.10. The contracts define "CPM Schedule" to mean "a graphic presentation of the planned sequence of the Project activities showing the interrelationships and interdependencies of the Project elements which identifies their relative degrees of criticality." Supply Contracts, Article 1.1.

22.    In lay terms, the critical path method ("CPM"), or critical path analysis, uses a mathematically based algorithm to determine which project activities directly impact the project completion date (and are thus "critical"), and which activities can be delayed without making the project longer. It is against the backdrop of a CPM analysis that delays attributable to Mitsubishi, if any, are properly assessed under the Supply Contracts. In manifest disregard of the terms of the Supply Contracts, the Tribunal majority chose not to employ a CPM analysis or consider the CPM Schedule in reaching its decision.

23.    The Supply Contracts moreover set forth the circumstances under which S&W may assess liquidated damages against Mitsubishi for delays affecting the critical path to Provisional Acceptance. For example, Article 9.9.1 of the Turbine Contract provides:

> If the requirements for Provisional Acceptance have not been achieved by the Guaranteed Provisional Acceptance Date, Supplier shall, <u>to the extent the delay is attributable to short-falls in the performance of the Equipment</u>, together with the equipment furnished under the HRSG Contract (combined), <u>or defects in such equipment which prevent such equipment from being started-up or tested within the required time</u>, Supplier shall pay to Purchaser, monthly in arrears on he seventh day following the receipt of an invoice therefore, liquidated damages equal to (a) one hundred twenty thousand ($120,000.00) dollars per Day (or such part thereof) in any month except June, July, August and September and (b) one hundred eighty five thousand ($185,000.00) dollars per Day (or such part thereof) during June, July, August and September.

(Emphasis added.) Notwithstanding the fact that Article 9.9.1 clearly provides for the assessment of liquidated damages in connection with defects in Mitsubishi equipment only, the

Tribunal majority exceeded its authority under the Supply Contracts by awarding liquidated damages to S&W for alleged deficiencies in, and delays caused by, Mitsubishi's TFA services.

24.    Petitioners respectfully submit that, by ignoring the contract provisions relating to the CPM Schedule and liquidated damages for delays to Provisional Acceptance, the Tribunal majority manifestly disregarded the terms of the Supply Contracts and exceeded its authority as defined in the parties' agreement.  Specifically, the Tribunal majority exceeded its authority by: (a) failing to measure any purported delay against the baseline schedule provided for in the Supply Contracts; (b) engaging in its own "slide ruler" approach as compared to the CPM analysis provided for in the Supply Contracts; (c) awarding liquidated damages for service-related performance; and (d) awarding liquidated damages after Provisional Acceptance.

WHEREFORE, for the reasons set forth herein and in the Memorandum of the Petitioners in Support of Their Motion to Vacate an Arbitral Award Pursuant to 9 U.S.C. § 10, which Petitioners hereby incorporate by reference, Petitioners respectfully request that this Court enter an Order:

(i) vacating the Award, and

(ii) awarding such other and further relief as the Court deems just and proper.

Dated: January 1ƒ, 2008

Philip R. White, Esq.
Loryn P. Riggiola, Esq.
Sills Cummis & Gross, P.C.
One Rockefeller Plaza
New York, New York  10020
Telephone: (212) 643-7000
Fax: (212) 643-6500
Attorneys for Mitsubishi Heavy
Industries, Ltd. and Mitsubishi Power
Systems Americas, Inc.

By: _____